*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2262**

State of Minnesota,
Respondent,

vs.

Raul Perez,
Appellant.

**Filed September 15, 2014
Affirmed
Bjorkman, Judge**

Norman County District Court
File No. 54-CR-13-58

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

James Brue, Norman County Attorney, Ada, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sean M. McGuire, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his felony-murder sentence, arguing that (1) the district court abused its discretion by imposing an upward durational departure based on the

aggravating factors that a child was present and that appellant was in a position of authority and (2) the district court did not expressly find substantial and compelling reasons for the departure.  We affirm.

## FACTS

Appellant Raul Perez pleaded guilty to second-degree felony murder, with the predicate felony of malicious punishment of a child under four years of age.  The plea was based on the following facts.  On August 29, 2012, L.C. left her five-year-old son, A.R., and her 22-month-old daughter, A.M.R., with Perez.  Around 11:45 a.m., the Norman County Sheriff's Department received a 911 call for assistance at L.C.'s home. A.M.R. was transported to the hospital, where she was diagnosed with a brain injury, intracranial hemorrhage, acute respiratory failure, and retinal bilateral hemorrhage. A.M.R. died two days later.  The county medical examiner concluded that A.M.R.'s death was a homicide.

The presumptive sentence for second-degree felony murder is 150 months.  As part of his plea, Perez waived his right to a jury determination on aggravating sentencing factors in exchange for the state's agreement that it would seek a sentence of no more than 240 months.  Perez stipulated that he was in a position of trust and authority as to the victim and a court trial was held on the second claimed aggravating factor—the presence of a child during the commission of the offense.  The district court found both aggravating factors were proven and imposed a 240-month sentence.  Perez appeals.

**D E C I S I O N**

Perez argues that the district court erred by departing from the presumptive sentence based on the presence of A.R. during the offense and Perez's status as a person in a position of trust or authority vis-à-vis the child. And Perez asserts the district court further erred by failing to find substantial and compelling circumstances to warrant the departure. We address each argument in turn.

**I.    The district court did not abuse its discretion by imposing an aggravated sentence based on Perez's commission of the offense in the presence of a child.**

The decision to depart from a presumptive sentence is within the district court's discretion. *State v. Stanke*, 764 N.W.2d 824, 827 (Minn. 2009). A district court must impose the presumptive sentence unless there are "identifiable, substantial, and compelling circumstances" to warrant an upward departure. Minn. Sent. Guidelines 2.D.1 (2012). "Substantial and compelling circumstances are those showing that the defendant's conduct was significantly more or less serious than that typically involved in the commission of the offense in question." *State v. Edwards*, 774 N.W.2d 596, 601 (Minn. 2009) (quotation omitted). We will reverse only if the district court's reasons for departure are improper or there is insufficient evidence on which to base a departure. *State v. Vance*, 765 N.W.2d 390, 395 (Minn. 2009).

Committing an offense "in the presence of a child" is a valid aggravating factor justifying a departure from the presumptive sentence. *See* Minn. Stat. § 244.10, subd. 5a(13) (2012); Minn. Sent. Guidelines 2.D.3.b.(13) (2012). A defendant commits a crime "in the presence" of a child if the child "saw, heard, or otherwise witnessed the offense,"

*Vance*, 765 N.W.2d at 394, or "*some portion* of the commission of the offense in question," *State v. Robideau*, 796 N.W.2d 147, 152 (Minn. 2011) (emphasis added).

At his plea hearing, Perez testified that when L.C. left for the grocery store, he was watching television with A.R. in the living room. Perez heard A.M.R. crying in the bedroom and brought her into the living room. Then, "all of a sudden, you know, I heard her crying a little bit and I just snapped for some reason. And I threw her in her crib, threw her hard, and after that it's what happened, you know, I saw that she wasn't right anymore." He admitted that "there was bodily harm . . . to her head and neck as a result of [his] actions" and that "the cause of her death was [his] actions toward her."

At sentencing, the state presented the testimony of A.R., and two adults who spoke with A.R. shortly after the offense occurred. A.R. testified that he saw Perez "jumping with [A.M.R.] and then he, then she was falling and falling and falling off the couch." R.V., a friend of L.C., spoke to A.R. at the hospital. She testified:

> [A.R. said A.M.R. and Perez] were Ninja Turtle fighting and I asked what is that? [Perez] flips [A.M.R.], flips her and flips her. And then I said "Then what happened?" [A.R. responded:] "And then I held her hand and I touched her stomach." I said, "No, before that [A.R.]." And he said, "He threw her on the couch."

V.C., L.C.'s sister, testified that she drove A.R. home from the hospital and asked him what happened to his sister. He told her that Perez "had thrown [A.M.R.] to the couch, thrown her to the couch and kept throwing her to the couch and she bounced and hit the floor." A.R. was crying and said that Perez told him to "be a good boy and not to tell anybody."

4

Perez does not dispute this testimony but argues that it is not sufficient to establish that A.R. was present when the offense occurred because he did not see Perez throw A.M.R. into the crib, the act that caused her death. We are not persuaded. Perez's felony murder conviction is predicated on his malicious punishment of A.M.R. Malicious punishment is defined as "an intentional act or a series of intentional acts with respect to a child" that evidences unreasonable force or cruel discipline. Minn. Stat. § 609.377, subd. 1 (2012). Perez's actions in the living room—in A.R.'s presence—and in A.M.R.'s bedroom were part of the series of intentional acts that constitute the malicious-punishment offense. The evidence establishes that A.R. saw Perez throwing A.M.R. hard enough for her to bounce and hit the floor.

A.R.'s statement that Perez told him not to tell anyone what he saw further supports the district court's finding. Perez argues that this evidence also supports a finding that Perez was warning him about some other incident. But we must assume that the fact-finder believed the state's evidence, and Perez's statement is evidence from which the fact-finder could reasonably conclude that Perez warned A.R. because A.R. was present during the offense. In sum, the evidence is sufficient to sustain the district court's finding that Perez committed some portion of the offense in A.R.'s presence. *See Robideau*, 796 N.W.2d at 152.

Perez next argues that the district court erred when it imposed an upward departure based on his position of authority, because that factor is an element of the offense. The state agrees and so do we. Only a person in a position of trust can commit the offense of malicious punishment of a child. Minn. Stat. § 609.377, subd. 1; *State v.*

5

*Mohamed*, 779 N.W.2d 93, 99 (Minn. App. 2010) (holding that district court improperly relied on aggravating factor that defendant was in a position of trust in imposing upward departure on sentence for malicious punishment of a child), *review denied* (Minn. May 18, 2010).

Having determined that only one of the aggravating factors the district court relied on is valid, we must determine whether it is necessary to remand for resentencing. When a district court relies on both proper and improper aggravating factors, we will affirm if we conclude that the district court would have imposed the same sentence absent reliance upon the improper aggravating factor. *Stanke*, 764 N.W.2d at 828. We consider the weight given to the invalid factor and whether the other aggravating factors found by the court independently justify the departure. *Id.* The presence of a single aggravating factor is sufficient to support an upward departure. *Mohamed*, 779 N.W.2d at 97.

At the sentencing hearing, the district court discussed both aggravating factors, found that the state met its burden of proving that Perez committed the offense in the presence of a child, and also considered Perez's family support, and several victim impact statements. The district court emphasized the fact that the crime was committed in A.R.'s presence:

> And I think about [A.M.R.'s] little brother and that was tough to see him and he's so young, but he's old enough that this is something that he is going to carry with him, probably for the rest of his life. . . . [F]ive years old is old enough to know what happened and he did know and he told people about it, and, you know, I heard [A.R.'s] mom talking about how he's doing. He's not doing so good. Hopefully, he can put it past him and carry on, but that is a *big aggravating factor* to have that little boy there and to have

6

> you tell him be a good boy and don't tell.  You knew he was there.  He knew he was there.  He talked about it.
>
> . . . .
>
> After thinking about in particular these aggravating factors and in *special particularity* [A.R.] being there at five years of age and this affecting him and you telling him not to talk about it, I find that the State's argument of a 240-month sentence is reasonable and appropriate in this case when we look at both aggravating factors.

(Emphasis added.)

Based on the district court's statements and our careful review of the record, we conclude that the district court would have imposed the same sentence based solely on the proper sentencing factor.

## II.    The district court made sufficient findings regarding the substantial and compelling reasons for the departure.

When departing from the presumptive sentence, the district court must specify the substantial and compelling nature of the circumstances that create a reason to depart, and which demonstrate why the sentence selected in the departure is more appropriate, reasonable, or equitable than the presumptive sentence.  Minn. Sent. Guidelines 2.D.C. ("In exercising the discretion to depart from a presumptive sentence, the court must disclose in writing or on the record the particular substantial and compelling circumstances that make the departure more appropriate than the presumptive sentence.").  The purpose of stating reasons for the departure is to "inform the defendant why the departure is being made" and to ensure that the defendant has not been deprived

"of knowing that the reasons used to enhance the sentence were legitimate." *State v. Bale*, 493 N.W.2d 123, 125 (Minn. App. 1992), *review denied* (Minn. Jan. 28, 1993).

Perez argues that the district court did not make sufficient findings because it did not expressly state that the aggravating factors it found created a "substantial and compelling reason to depart." But the record indicates that the district court stated the reasons for the departure on the record at the sentencing hearing and identified the circumstances that made the departure appropriate: "What we have are two aggravating factors that do authorize a higher sentence than what the guidelines would provide. And so then the Court looks at really all of the arguments that have been made and all of the facts and all of the circumstances." As noted above, the court then discussed A.R.'s presence during the offense, and concluded that a departure "is reasonable and appropriate in this case." Although the district court did not use the words "substantial and compelling," this language is not required so long as the district court explains its reasons for imposing a departure. *See State v. Petersen*, 799 N.W.2d 653, 659 (Minn. App. 2011) ("A reviewing court examines the record to determine if the *reasons* given by the district court justify the departure." (emphasis added)), *review denied* (Minn. Sept. 28, 2011). The district court clearly did so.

**Affirmed.**